IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ANDREW CLINTON CRUSE, JR.**                                              **PLAINTIFF**

**v.**                                        **No. 4:17CV162-DAS**

**MS. DEPT. OF CORRECTIONS, ET AL.**                                **DEFENDANTS**

**MEMORANDUM OPINION**

The plaintiff, an inmate in the custody of the Mississippi Department of Corrections, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether any claims in the present case filed under 42 U.S.C. § 1983 have sufficient merit to proceed. A plaintiff's claim must be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit.[1] For the reasons set forth below, all of the plaintiff's claims will be dismissed with prejudice, except his claims of unconstitutionally harsh general conditions of confinement and failure to protect him against various threats.

**Discussion**

Mr. Cruse has made numerous allegations against the medical doctors and staff at the Mississippi State Penitentiary in Parchman regarding the level of his care. He testified at the *Spears*

---

[1] 28 U.S.C. § 1915(g).

hearing that he was satisfied with the treatment he received while housed at the Marshall County Correctional Facility; as such, in the present case the court will consider only the treatment he received at Parchman.

Mr. Cruse has also alleged that various members of the Parchman staff have violated his constitutional rights in other ways. To the extent that Mr. Cruse's allegations at his *Spears* hearing differed from those in his complaint, the court has considered the allegations given live and under oath at the *Spears* hearing. The court has set forth and discussed each allegation below.

## Medical Care

Mr. Cruse alleges that he suffers from multiple serious medical conditions:

(1) degenerative joint disease in his left hip, which now grinds bone-on-bone when he moves it;

(2) C.O.P.D.;

(3) Serious rash that spread across his body and into his eyes;

(4) Congestive heart failure;

(5) High blood pressure;

(6) Allergies to common prison foods (oatmeal, bologna, salami, and hot dogs);

(7) Asthma;

(8) No teeth;

(9) GERD; and

(10) Neuropathy in his hands and feet.

### Hip Problems

Mr. Cruse makes many medical claims, but his focus is on the lack of proper treatment for his arthritic hip. He would like to continue to receive cortisone shots every 90 days in the near term, but ultimately would like to undergo hip replacement surgery.

Mr. Cruse alleges that Free World doctors examined him while he was housed in the Harrison County Adult Detention Center and told him that he required replacement of his left hip. He was, apparently, scheduled for hip replacement at a Free World doctor in Harrison County, but was transferred to the custody of MDOC before the surgery took place. Now that Mr. Cruse is in MDOC custody, prison doctors will not approve that procedure. He also alleges that medical personnel at the Mississippi State Penitentiary ("Parchman") prevented him from receiving cortisone injections in his hip to relieve the pain during his stay there. After the one injection he did receive at Parchman (which he believes was a painkiller, rather than cortisone), he started vomiting and became feverish for several days. After Mr. Cruse's adverse reaction to the injection, Parchman medical staff offered only Tylenol, aspirin, ibuprofen, and naproxen to relieve his hip pain, none of which gave significant relief.

He stayed at Parchman for seven to eight months and was then transferred to the Marshall County Correctional Facility ("MCCF"). Once there, he started receiving cortisone injections every 90 days from an orthopedic surgeon in Oxford. He believes that the medications he received at Parchman for his arthritic hip (Tylenol, aspirin, naproxen, and ibuprofen) have cause enlargement of his liver, kidney problems, and a severe rash, though no medical personnel have made such a diagnosis.

**Other Medical Complaints**

He further complains that medical personnel changed his medication regimen, switching to the least costly alternative in each case. For example, he had been receiving Nexium for GERD, but MDOC switched him to Prilosec (a cheaper alternative). Medical staff have also refused him a special diet, which he has requested because of GERD and his inability to chew his food. Mr. Cruse alleges that, at one point, he passed out in his unit and showed signs of a mild stroke (chest pain, numbness in his left arm and the left side of his face), but Nurse Angela Brown would not treat him. He has not

alleged that the deficits persisted.

**Defendants' Participation as to Each Claim**

Mr. Cruse alleges that the following defendants participated in the denial of adequate medical care:

Timothy Morris, Verlena Flagg, Pelicia Hall, Jerry Williams, Krystal Carter, Carolyn Orr, Marylen Sturdivant permitted him to be housed in improper units and unsanitary conditions.[2]

Centurion of Mississippi knowingly allowed its employees to deny Mr. Cruse proper medical treatment.

Nurse Angela Brown "changed [Cruse's] medical" care in a way that exceeded her expertise (as to hip problems and "mild stroke.")

Willie Knighten and Nurse A. Goldin denied Cruse's request for a medical profile and permanent lay-ins based upon his hip condition.

Dr. Juan Santos ignored the findings and orders of Mr. Cruse's Free World doctors regarding a severe rash and the need for hip replacement.

Krystal Carter and Carolyn Orr refused to transfer Cruse to a unit for inmates with medical conditions.

**Denial of Medical Treatment**

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying

---

[2] This allegation is better characterized as a claim regarding the general conditions of confinement and will be considered in that section of this memorandum opinion.

or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). In cases arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

A plaintiff's claim for denial of medical care must fail when "medical records indicate that [he] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). A claim for denial of medical care must also fail when it involves allegations that medical personnel did not handle the plaintiff's requests in a manner he desired – or that the simply disagreed with the treatment. *Id.*; *Miller v. Wayback House*, 253 F.App'x 399,

401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

Mr. Cruse's allegations do not rise to the level of deliberate indifference. Medical personnel at Parchman treated him whenever he filed sick call requests. As to his arthritic hip, he received an injection (though it made him feel ill), and he received various anti-inflammatory drugs to relieve the pain. The other claims involve medical doctors and staff examining Mr. Cruse and deciding on a plan of care. Many of these attempts did not provide relief; however, unsuccessful attempts to treat a medical condition do not constitute deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). As to Dr. Santos' decision not to recommend Cruse for hip replacement, prison doctors are not required to follow the advice of other treating physicians, including specialists. *Id.* at 350. Finally, the decision by medical professionals to provide (or not to provide) treatment "'is a classic example of a matter for medical judgment.'" *Domino v. Texas Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Estelle,* [*v. Gamble,* 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)]). All of Mr. Cruse's allegations regarding medical treatment involve only his disagreement with the course of treatment provided, and those allegations do not constitute a valid claim under 42 U.S.C. § 1983.

### "Verbal Sexual Assault"

Mr. Cruse also alleges that Sgt. Mary Robinson stated, within earshot of the other inmates on his zone, that Cruse had sexual relations with her homosexual brother. As a result of this, inmates used slurs against him. Similarly, when the court asked Mr. Cruse about his claim of sexual assault, he testified that a female K-9 officer had verbally "assaulted" him during a pat-down search. Mr. Cruse

characterizes both of these incidents as "verbal sexual assault."  Mr. Cruse called the rape hotline regarding the affronts, but no one provided assistance.  These allegations do not state a constitutional claim, as verbal abuse by a prison guard does not give rise to a cause of action under § 1983.  *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993), *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997).

**Failure to Protect**

Warden Sonja Stanciel placed Mr. Cruse and other caucasian prisoners in Unit 30-A, which, according to Cruse, is where many black gang members are housed.  The black gang members told Cruse that "it's a hate thing" – and have beaten other white inmates, leaving them with black eyes, knots, and bruises.  According to Mr. Curse, sometimes, on Fridays, the guards let the inmates participate in "fight night," where they fight each other.  Mr. Cruse has neither been attacked nor compelled to participate in "Friday fight night," and he has suffered no physical injury from the defendants' acts or omissions.  At the time of his *Spears* hearing, Mr. Cruse had been transferred from Unit 30 in Parchman to the Marshall County Correctional Facility in Holly Springs, Mississippi.

"The Eighth Amendment affords prisoners protection against injury at the hands of other inmates."  *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted).  Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] … the failure to protect."  *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995).  A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference.  *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843. However, even in the absence of specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), overruled on other grounds by *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). Indeed, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

Under this standard, Mr. Cruse has alleged facts sufficient to state a claim for failure to protect, and this claim will proceed.

**Taking of Property Without Due Process of Law**

Lt. Johnson and Sgt. Mary Robinson took some of Cruse's possessions from him: legal work, legal mail, a spoon, a cereal bowl, two coffee mugs, half his medication, and his state-issued clothes and identification. The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the

Paratt/Hudson doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 Fed.Appx. 731 (5th Cir. 2011). Thus, the initial question before the court as to the plaintiff's claim regarding the taking of his property is whether Mississippi law affords him an adequate post-deprivation remedy for his loss.

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"), which became effective on April 1, 1993. As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m). At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012). The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss.), *citing Johnson v. King*, 85 So.3d 307 (Miss.App.,2012). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The circumstances in *Johnson* are legally indistinguishable from those in the instant case. The prison officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson v. King*, 85 So.3d 307, 311-312 (Miss. App. 2012). Johnson had purchased the mug from the canteen with his own money. *Id*. The mug as purchased was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id*. The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for the fair value of the mug. *Id*. Those facts mirror the facts in the present case. As such, the plaintiff in this case has an adequate remedy under state law, and his claims for the taking of his property without due process of law must be dismissed.

**General Conditions of Confinement**

Inmates and guards steal food from the kitchen and sell it for profit, leaving most inmates with insufficient portions, roughly half of the required amount. Food in Unit 29 is unsanitary and often contains rust and dirt and sometimes has an oily film on it. Often the food is served by dirty inmates with communicable diseases, such as hepatitis C. Aramark Food Service took no action to correct these problems. In Units 29-E and 29-F, there was only one toilet and one urinal for each 64 inmates, and the roof leaked badly when it rained. Unit 29-F failed many fire code and health inspections. Gang violence occurs regularly in Unit 29. Mr. Cruse's COPD condition leaves him vulnerable to contaminated air, and Units 29 and 30 (where Cruse was housed) both contain black mold, which he

believes has caused his conditions to worsen. Mr. Cruse believes that the following defendants knew about the poor conditions, but took no action to correct them: Pelicia Hall, Jerry Williams, Timothy Morris, Verlena Flagg, Carolyn Orr, Marylen Sturdivant, Lt. Johnson, and Aramark Food Services. He has also named the Mississippi Department of Corrections as a defendant regarding this claim.

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Taking into account the "totality of the circumstances" alleged, *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the plaintiff alleges facts sufficient to show that the defendants denied him "basic human need[s]" for an unreasonable period of time. *See Woods*, 51 F.3d at 581. Mr. Cruse's claim regarding general conditions of confinement will, therefore, proceed.

### Retaliation

Mr. Cruse has observed staff members (Nurse Brown, Sgt. Harris, and a Kitchen Worker) bring contraband into the facility and has reported these events on a hotline for prisoners to report trouble in a way that, apparently, bypasses the normal method for an inmate to seek redress for grievances (the Administrative Remedy Program). He received a verbal threat after calling the hotline when Sgt. Harris told him that he had better shut his mouth or he may turn up missing. In addition, two days after calling the hotline, Mr. Cruse was placed in isolation for four hours.

As a general proposition, verbal threats do not rise to the level of a constitutional violation. *See Calhoun v. Hargrove,* 312 F.3d 730, 734 (5th Cir. 2002). The Fifth Circuit has held that "mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations." *Robertson v. City of Plano, Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (alteration omitted); *see Hines v. Cain*, 2007 WL 891880 at *4 (E.D. La. Mar. 20, 2007) (collecting cases); *see also Hudson v. Univ. of Tex. Medical Branch*, 441 Fed.App'x. 291, 292–93 (5th Cir. 2011) (finding that mere threats fail to support a claim of retaliation). A prison official's mere use of threatening language, without more, does not constitute a retaliatory adverse act; instead, a prisoner seeking to prove a claim of retaliation must allege that he "suffered a concrete, tangible harm." *Hudson v. Univ. of Tex. Med. Branch*, 441 F. App'x 291, 293 (5th Cir. 2011). Mr. Cruse has not done so in the present case; as such, his claims for retaliation based upon verbal threats must be dismissed.

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id.* The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL

706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685.  A single incident involving a minor sanction is insufficient to prove retaliation.  *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)), 2012 WL 3544865.  Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim.  *See Morris* at 685.

In this case, Mr. Cruse must prove that he engaged in constitutionally protected activity (seeking redress for grievances), *faced significant adverse consequences*, and that such action was taken "in an effort to chill [his] access to the courts or to punish [him]for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994)(emphasis added); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir. 1987).  The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation."  *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

Mr. Cruse alleges that his placement in isolation for four hours constitutes a retaliatory adverse consequence for calling the prison hotline.  The court finds, however, that such short detention, in the prison context, is not sufficiently adverse such that it would deter a person of ordinary firmness from calling the hotline in the future.  As such, Mr. Cruse's claim of retaliation for calling the prisoner hotline must be dismissed for failure to state a claim upon which relief could be granted.

**Conclusion**

For the reasons set forth above, the plaintiff's claims of denial of medical care, sexual assault, taking of property without due process, and retaliation will be dismissed for failure to state a claim upon which relief could be granted.  His claims for unconstitutionally harsh general conditions of confinement and failure to protect will, however, proceed against Pelicia Hall, Jerry Williams,

Timothy Morris, Verlena Flagg, Carolyn Orr, Marylen Sturdivant, Lt. Johnson, Aramark Food Services, and the Mississippi Department of Corrections (general conditions), as well as Carolyn Orr and Sonja Stanciel (failure to protect).

In addition, the following defendants will be dismissed with prejudice from this suit: Krystal Carter, Centurion of Mississippi, Angela Brown, Willie Knighten, A. Goldin, Juan Santos, Mary Robinson, and Sgt. Harris.

**SO ORDERED**, this, the 24th day of August, 2018.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE