## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

ANDREW CLINTON CRUSE, JR.                                                    PLAINTIFF

v.                                                              No. 4:17CV162-DAS

MS. DEPT. OF CORRECTIONS, ET AL.                                         DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Andrew Clinton Cruse, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

The court initially dismissed this case for failure to pay the filing fee by the 21-day deadline. Doc. 106. However, the plaintiff was later able to show [156], [157] that he had paid the full filing fee by the deadline, and the court, through this memorandum opinion and final judgment will reinstate the case, as well as the defendants' motions [76], [89] for summary judgment. The plaintiff clearly wishes to proceed with this case, and payment of the filing fee is required to do so; as such, his motion [155] for refund of the filing fee will be dismissed.

In his remaining claims, the plaintiff alleges that the defendants Sonja Stanciel and Carolyn Orr failed to protect him against various threats. He also alleges that defendants Pelicia Hall, Jerry Williams, Timothy Morris, Verlena Flagg, Carolyn Orr, Marylen Sturdivant, Lt. Johnson, Aramark Food Services, and the Mississippi Department of Corrections placed him in unconstitutionally harsh general conditions of confinement.

The Mississippi Department of Corrections ("MDOC") defendants[1] have moved [89] for summary judgment, arguing, *inter alia*, that the case should be dismissed because the plaintiff did not exhaust his administrative remedies before filing the instant suit. Defendant Aramark Correctional Services, LLC ("Aramark") has also moved [76] for summary judgment, arguing, *inter alia*, that the plaintiff's claims against Aramark fail on the merits. The plaintiff has responded [96] to the MDOC defendants' motion for summary judgment, but has not responded to Aramark's summary judgment motion, and the deadline to do so has expired.[2] For the reasons set forth below, the two motions [76], [89] for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies – and, as to Aramark, the plaintiff's claims will also be dismissed on the merits.

## Procedural Posture

The plaintiff filed the instant complaint on November 14, 2017. On August 24, 2018, the court issued a memorandum opinion [27] and judgment [28] dismissing the following defendants for failure to state a claim upon which relief could be granted: Krystal Carter, Centurion of Mississippi, Angela Brown, Willie Knighten, A. Goldin, Juan Santos, Mary Robinson, and Sgt. Harris. The case proceeded against the remaining defendants based upon two claims: (1) failure to protect (against

---

[1] The MDOC defendants are: Pelicia Hall, Jerry Williams, Timothy Morris, Verlena Flagg, Carolyn Orr, Marylen Sturdivant, Lt. Johnson, Sonja Stanciel, and the Mississippi Department of Corrections. MDOC counsel filed the summary judgment motion on behalf of each of these defendants, except for Lt. Johnson.

[2] It appears that the plaintiff attempted to respond to Aramark's motion [76] for summary judgment, as Aramark filed a Reply [84] to Cruse's Response. However, the plaintiff's response appears not to have made it to the court. If the plaintiff presents a response to Aramark's motion within 21 days, the court will revisit the merits of Aramark's' claims in light of that response. However, as the plaintiff responded [96] to the MDOC defendants' summary judgment motion, the instant ruling (dismissal of the case for failure to exhaust administrative remedies) will remain in effect.

Carolyn Orr and Sonja Stanciel), and (2) unconstitutionally harsh general conditions of confinement (against Pelicia Hall, Jerry Williams, Timothy Morris, Verlena Flagg, Carolyn Orr, Marylen Sturdivant, Lt. Johnson, Aramark, and MDOC.)

Aramark filed a motion [76] for summary judgment; the MDOC defendants also filed a summary judgment motion [89] – and, simultaneously, a motion [87] for judgment on the pleadings. In their motion for judgment on the pleadings, the MDOC defendants noted that Cruse, a *pro se* prisoner, had accumulated three "strikes" under the Prison Litigation Reform Act and was thus prohibited from proceeding as a pauper. Doc. 88 at 2-3. Aramark joined [95] the motion, and Cruse responded [93]. The court granted [105] the motion, revoked the plaintiff's pauper status, and directed him to pay the full filing fee within 21 days; otherwise, the case would be dismissed. The court did not receive the filing fee within 21 days and dismissed [106] the case for that reason.

Cruse then filed two motions for relief from judgment, arguing that he received neither notice of the court's order [105] revoking his *in forma pauperis* status, nor the order [106] of dismissal for failing to timely pay the filing fee. Upon reviewing the evidence, the court granted [130] the motions, reinstated the case, and, again, set a 21-day deadline for the plaintiff to pay the full filing fee. That deadline expired on June 7, 2021. Cruse provided documentation tending to show that $280.00 had been paid toward the filing fee as of May 6, 2021. Docs. 134, 134-1. However, he did not provide evidence that he had paid the full filing fee, and the court again dismissed [141] the case for failure to pay the filing fee. Cruse filed a motion [151] to reinstate the case, arguing that he had paid the entire filing fee before the deadline – $70 on March 9, 2021, and $280 on May 7, 2021. As it did not appear that any funds had been applied to the filing fee in this case, the court again denied [152] the plaintiff's motion. The plaintiff objected [154] to the court's denial, arguing that the prison financial services company would not provide him specific enough information to support his motion.

- 3 -

He then filed a motion [155] to refund the filing fee, and two motions [156], [157] to reinstate the instant case. In one motion [156] to reinstate, Cruse provided documentation from the prison's financial services company to support his assertion that he had timely paid the filing fee in this case. It appears from that document that he made payments of $30, $60, and $190 on May 11, 2021, then a $70 payment on the June 7, 2021 (the deadline). As such, it appears that Cruse, indeed, paid the $350 filing fee by the deadline. As Cruse now seeks to proceed with the instant case, his motion [155] for a refund of the filing fee will be denied, and his motions [156], [157] to reinstate this case will be granted. As motions for summary judgment by Aramark [76] and the MDOC Defendants [89] were pending and briefed at the time the case was dismissed, the court will reinstate and consider those motions, as well.

**Factual Allegations**

**Failure to Protect**

Warden Sonja Stanciel placed Mr. Cruse and other white prisoners in Unit 30-A, which, according to Cruse, is where many black gang members are housed. The black gang members told Cruse that "it's a hate thing" – and have beaten other white inmates, leaving them with black eyes, knots, and bruises. According to Mr. Cruse, sometimes, on Fridays, the guards let the inmates participate in "fight night," where they fight each other. Mr. Cruse has neither been attacked nor compelled to participate in "Friday fight night," and he has suffered no physical injury from the defendants' acts or omissions. At the time of his *Spears* hearing, Mr. Cruse had been transferred from Unit 30 in Parchman to the Marshall County Correctional Facility in Holly Springs, Mississippi. He is currently housed at the Central Mississippi Correctional Facility ("CMCF").

**General Conditions of Confinement**

- 4 -

Inmates and guards steal food from the kitchen and sell it for profit, leaving most inmates with insufficient portions, roughly half of the required amount. Food in Unit 29 is unsanitary and often contains rust and dirt and sometimes has an oily film on it. Often the food is served by dirty inmates with communicable diseases, such as hepatitis C. Aramark Food Service took no action to correct these problems. In Units 29-E and 29-F, there was only one toilet and one urinal for each 64 inmates, and the roof leaked badly when it rained. Unit 29-F failed many fire code and health inspections. Gang violence occurs regularly in Unit 29. Mr. Cruse's COPD condition leaves him vulnerable to contaminated air, and Units 29 and 30 (where Cruse was housed) both contain black mold, which he believes has caused his conditions to worsen. Mr. Cruse believes that the following defendants knew about the poor conditions, but took no action to correct them: Pelicia Hall, Jerry Williams, Timothy Morris, Verlena Flagg, Carolyn Orr, Marylen Sturdivant, Lt. Johnson, and Aramark Food Services. He has also named the Mississippi Department of Corrections as a defendant regarding this claim.

### The Plaintiff Did Not Exhaust His Administrative Remedies as to Any of His Claims

The defendants argue in the instant motion that the plaintiff did not exhaust his administrative remedies before filing the instant suit, as required under the Prison Litigation Reform Act:

> No action shall be brought with respect to prison conditions under [42 U.S.C.§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other prison until such administrative remedies as are available are exhausted.

*See* 42 U.S.C. § 1997e(a). Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress created the exhaustion requirement to weed out the frivolous claims from the colorable ones. *Id*. at 203.

Thus, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983.

The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not

have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its prisons. Under this statutory authority, the Mississippi Department of Corrections created the Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether to accept it into the ARP process. *Id.* The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances.

As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra.* Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson*

*v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process).  However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf ("Inmate Handbook, Chapter VIII, Administrative Remedy Program") (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the inmate.  *Howard, supra*.  An inmate may only pursue one grievance at a time; additional requests "will be logged and set aside for handling at the Director's discretion":

> If an inmate submits additional requests during the period of Step One review of his request, *the first request will be accepted and handled*.[3]  The others will be logged and set aside for handling at the Director's discretion.  A maximum of ten requests will be logged.  Requests above that number will be returned to the inmate and not filed.

Inmate Handbook, Chapter VIII, Administrative Remedy Program, VII(A).

If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate grievance form and sending it to the Legal Claims Adjudicator.  *Id.* The Superintendent, Warden, or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process.  *Id.*  Issuance of the Second Step

---

[3] Hence, only the first grievance will be accepted; while it is pending, the subsequent ones will be backlogged.  The grievance process will not begin for the second grievance until the first grievance has been resolved.  Likewise, the process will not begin for the third grievance until the second has been resolved, and so on – until no more grievances are backlogged.

Response is one of two ways to complete the grievance process.[4]  If the inmate is unsatisfied with that response, he may file suit in state or federal court.  *Id*.

The Inmate Handbook requires that a grievance "present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident."  *See Pinkton v. Jenkins*, 2019 WL 1089087, *3 (N.D. Miss. 2019).  Although a plaintiff is "not required to present specific legal theories in his grievances, . . . he [is] required to provide facts and to alert prison officials of the problem in order to give them an opportunity to address it."  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  "[T]his portion of [MDOC's] ARP requires that all officials involved be named or at least referenced in description."  *Holton v. Hogan*, 2018 WL 707544, *3 (S.D. Miss. 2018); *see also Pinkton*, 2019 WL 1089087 at *3 (dismissing claims against two defendants for failure to exhaust administrative remedies where plaintiff never filed grievance regarding the actions of the two defendants).

Mr. Cruse filed the instant case on November 14, 2017.  As of June 20, 2019, he had filed only six grievances with MDOC:

> **CMCF-17-1413:**  **Accepted.**  Submitted April 24, 2017.  Issue – Problems with legal mail and the Inmate Legal Assistance Program ("ILAP") at CMCF.[5]  **Completed** August 11, 2017.

---

[4] The MDOC Inmate Handbook describes the other way to exhaust the grievance process:

Unless an extension has been granted, no more than 90 days shall elapse *from the beginning of the process* to ending the process.  Absent such extension, expiration of the response time limits without receipt of a written response shall entitle the inmate to move to the next step in the process.

Inmate Handbook, Section VIII, Paragraph (VIII(A)) (emphasis added).

[5] *See* Exhibit A.  The exhibits referenced in this memorandum opinion may be found attached to the MDOC defendants' motion [89] for summary judgment.

| | |
|---|---|
| **CMCF-17-1577:** | **Rejected.** Submitted May 13, 2017. Issue – Conditions at the Receiving and Classification ("R&C") Unit at CMCF.[6] Rejected for filing grievance on behalf of other inmates. **Grievance process terminated** because plaintiff did not file a corrected grievance within five days of receipt of rejection. |
| **MSP-17-1548:** | **Never completed.** Submitted April 22, 2017. Issue – Response to plaintiff's request for medical care.[7] Placed on backlog because previously accepted grievances were under review. Plaintiff received First Step Response on November 30, 2017. **Closed at the First Step** because plaintiff did not submit a request to advance to the Second Step within five days of receipt of First Step Response. |
| **MSP-18-0723:** | **Ongoing at the time plaintiff filed suit.** Issue – Denial of a noon meal and a request to be transferred out of Unit 30 at the Mississippi State Penitentiary because of "verbal sexual assault."[8] Submitted on September 24, 2017. Placed on backlog on September 26, 2017, because previously accepted grievances were under review. Pulled from backlog and opened on May 18, 2018. **The response was not yet due when affidavit executed on May 24, 2018.** |
| **MSP-18-1650:** | **Rejected.** Issue – Problems with plaintiff's legal mail.[9] Submitted November 25, 2018. Rejected on November 26, 2018, because the relief sought (disciplinary action against a prison staff member) was beyond the power of the ARP to grant. Plaintiff signed for receipt of rejection form on November 29, 2018. **Grievance process terminated** because the plaintiff did not file a corrected grievance within five days of receipt of rejection. |
| **MSP-19-0193:** | **Ongoing (at First Step) as of June 21, 2019.** Issue – Problems with inmate mail and ILAP.[10] Submitted on February 9, 2019. Received by ARP on February 19, 2019. Accepted on February 26, 2019. **First Step Response issued on May 17, 2019.** |

Doc. 89-7 (affidavit of Investigator Le Tresia Stewart).

---

[6] *See* Exhibit B.

[7] *See* Exhibit C.

[8] *See* Exhibit D.

[9] *See* Exhibit E.

[10] *See* Exhibit F.

**Grievance CMCF-17-1413 - Completed**

As shown above, in the present case, by June 20, 2019, the plaintiff had only filed six grievances – and had completed only one: CMCF-17-1413 (regarding problems with legal mail and ILAP at CMCF). This grievance is not relevant to the present case because the plaintiff's allegations do not involve problems with legal mail in ILAP; as such, it does not serve to exhaust the plaintiff's administrative remedies as to the issues in the present case.

**Grievance CMCF-17-1577 - Rejected**

The plaintiff did file a grievance (CMCF-17-1577) that touched on an issue in this case (conditions within the R&C Unit at CMCF); however, that grievance was rejected for "fil[ing] on the behalf of other offenders." Exh. B. The plaintiff did not file a corrected grievance within five days of receipt of the rejection; as such, the grievance process was terminated, and he did not exhaust his administrative remedies regarding this issue.

**Grievances MSP-18-1650 and MSP-19-0193 – Submitted *After* Suit Filed**

Two of the six grievances were filed long *after* the plaintiff filed the instant case (MSP-18-1650 and MSP-19-0193 – both regarding legal mail and ILAP). As the plaintiff did not even begin the grievance process until after he filed suit, he obviously could not have completed it before filing. He did not exhaust his administrative remedies as to these claims.[11]

**Grievance MSP-17-1548 – Never Completed**

The plaintiff never completed the process for grievance number MSP-17-1548 (involving the response to the plaintiff's request for medical care). As such, that grievance does not serve to exhaust

---

[11] In any event, ILAP and legal mail problems are not an issue in this case.

administrative remedies for any issue in this case. In addition, the plaintiff's claims regarding denial of adequate medical care were previously dismissed. Docs. 27, 28.

### Grievance MSP-18-0723 – Not Completed When Suit Was Filed

Finally, at the time the plaintiff filed the instant suit, he had not completed the grievance process as to MSP-18-0723, involving denial of a noon meal – and a request to be transferred out of Unit 30 at the Mississippi State Penitentiary because he feared retribution by the guards when he complained that a guard subjected him to a "verbal sexual assault." Exh. D. As the plaintiff did not complete the grievance process before filing suit, this grievance does not serve to exhaust his administrative remedies.

In sum, most of the six grievances the plaintiff submitted did not involve his claims in the instant case, and he did not complete the grievance process as to five of them. In addition, the one grievance he pursued to completion did not involve his claims in the instant case. As such, the plaintiff has not exhausted his administrative remedies as to any claim in the instant case, as required by the Prison Litigation Reform Act, and this case will be dismissed without prejudice for that reason.

### The Plaintiff's Claims Against Aramark Fail on the Merits

The plaintiff claims that Aramark permitted other inmates to reduce his food portions, greatly limiting his daily caloric intake. His claims are against Aramark employees, not Aramark, itself, as § 1983 liability cannot be predicated upon a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Doe v. Rains County Independent School District*, 66 F.3d 1402, 1409 (5th Cir. 1995). As set forth below, Aramark provided food consistent with the plaintiff's medical diet, and Aramark's employees did not take part in serving food to MDOC inmates.

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson*

*v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Considering the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the instant claims do not rise to the level of a constitutional violation.

The plaintiff makes two claims regarding his food: (1) inadequate food portions due to inmates stealing food; and (2) Aramark's alleged failure to adhere to plaintiff's medical diet. Based on the evidence contained within plaintiff's medical records, these allegations do not amount to constitutional violations.

Prisoners have a constitutional right to receive reasonably adequate food. *George v. King,* 837 F.2d 705, 707 (5th Cir. 1987). This requirement includes "well-balanced meal[s], containing sufficient nutritional value to preserve health." *Shelton v. Stringer*, No. 2:04 CV 134-MTP, 2007 WL 2258901, at *4 (S.D. Miss. Aug. 3, 2007). The deprivation of essential food constitutes cruel and unusual punishment only where it denies a prisoner the minimal civilized measure of life's necessities. *Berry v. Brady,* 192 F.3d 504, 507 (5th Cir.1999). In this case, the plaintiff received reasonably adequate food to preserve his health.

**Aramark Employees Do Not Serve Food to Inmates**

As an initial matter, under its contract with MDOC, Aramark prepares three meals a day, *which are served by inmates to inmates*. *Id.* at ¶ 8-9, 12. As Aramark employees have no part in

serving food to inmates, they have no control over the portions the plaintiff receives – or whether other inmates serve him less than the allotted portion. This claim is without substantive merit.

### The Plaintiff Had Access to a Nutritionally Adequate Medical Diet

In this case, Aramark prepared a sufficient amount of food per meal to ensure that the plaintiff received a nutritionally adequate diet that was prepared and served – under conditions which do not present a danger to his health and well-being. *See* Affidavit of Julie Croegaert attached to Aramark's Brief in Support of Motion for Summary Judgment as Exhibit "5" at ¶ 3-4. The meals the plaintiff received met caloric and nutritional requirements for inmates and were adequate to maintain good health. *Id.* at ¶ 4. The meals provide approximately 2900 calories per day, with healthy amounts of protein, vitamin A, vitamin C, calcium, and iron. *Id.* Because the meals were nutritionally adequate, the plaintiff's diet does not deny him the minimal civilized measures of life's necessities, and his claim regarding the caloric or nutritional adequacy of his diet, as prepared by Aramark, must fail.

As to his medical diet, the plaintiff reports to a food hall for meals, and it is up to him to inform the inmate food servers that he is supposed to receive a medical diet. Affidavit of Mary Williams, attached to Aramark's Brief in Support of Motion for Summary Judgment as Exhibit "1", ¶ 15.) A medical diet must be prescribed by the detention center physician. *Id.* at ¶ 2. If a diet is prescribed, Aramark ensures that it prepares sufficient food to meet the needs of all specially ordered diets. *Id.* at ¶ 10-11. In this case, a medical diet was ordered for Mr. Cruse, was scheduled to start on August 11, 2017, and was set to end in October 2018. *See* Medical record "MDOC-CRUSE-000471" attached as Exhibit "2"; *see also* Ex. 1 at ¶ 3. The plaintiff's medical diet order contained no food allergy restrictions – and only instructed Aramark to prepare the plaintiff a cardiac diet. *Id; see also* Ex. 1 at ¶ 4. Indeed, the plaintiff has provided no documents showing that he suffered any harm from allegedly missing his cardiac diet on occasion.

- 14 -

According to the plaintiff's medical records and the MDOC website, the plaintiff lost only five pounds from March 7, 2017, to March 9, 2019 – from 203 pounds to 198 pounds.  *See* https://www.ms.gov/mdoc/inmate/Search/GetDetails/64876; Ex. 6. at MDOC-CRUSE-001097.  This small weight loss over two years does not indicate that the plaintiff consumed far less calories than allotted over that period – especially considering the medical finding that he is obese.  *See* Exhibit "6", Medical record at MDOC-CRUSE-001097.  Certainly, it is not the type of dramatic weight loss that might pose a risk to the plaintiff's health.

The plaintiff has presented no evidence that Aramark denied his medical diet and thereby disregarded an excessive risk to his health.  A claim that he occasionally did not receive his medical diet sounds in negligence, which does not rise to the level of a constitutional violation.  *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).  For these reasons, the plaintiff's claims against Aramark will be dismissed with prejudice on the merits.

### Conclusion

For the reasons set forth above:

(1) The plaintiff's motion [155] for a refund of the filing fee will be dismissed;

(2) His motions [156], [157] to reinstate this case will be granted;

(3) The defendants' motions [76], [89] for summary judgment will be granted;

(4) The instant case will be dismissed without prejudice for failure to exhaust administrative remedies as to all remaining defendants;

(5) Though MDOC counsel did not file the motion [89] for summary judgment on behalf of Lt. Johnson, the plaintiff's claims against him will also be dismissed without prejudice, as the

defense of failure to exhaust benefits Johnson, as well;[12]

(6) Similarly, Aramark raised the defense of failure to exhaust in its answer; the defense applies equally to Aramark, which will be dismissed without prejudice from this case for that reason; and

(7) The plaintiff's claims against Aramark will also be dismissed with prejudice on the merits.

A final judgment consistent with this memorandum opinion will issue today.

      **SO ORDERED**, this, the 17th day of August, 2023.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE

---

[12] Where a defending party shows that a plaintiff has no cause of action, the defense also benefits an unserved or defaulting defendant. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).